UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80511-CIV-CANNON/McCabe

**JESSICA HERNANDEZ**
and **SHEILA C. FIGUEROA**,

    Plaintiffs,
v.

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

## ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Defendant's Motions to Dismiss for Failure to Exhaust Administrative Remedies or, Alternatively, for Limited Discovery and Evidentiary Hearing (the "Motions") [ECF Nos. 7, 25]. The Motions were referred to Magistrate Judge Ryon M. McCabe for a report and recommendation [ECF Nos. 12, 26]. On January 22, 2025, Magistrate Judge McCabe issued a report recommending that Defendant's Motions be granted (the "Report") [ECF No. 49]. The Court has reviewed the Report [ECF No. 49], Plaintiffs' Objections [ECF Nos. 55–56], Defendant's Response [ECF No. 59], and the full record. For the reasons set forth below, the Report [ECF No. 49] is **ACCEPTED** and the Motions [ECF Nos. 7, 25] are **GRANTED**.

### RELEVANT BACKGROUND

Plaintiffs Jessica Hernandez and Sheila C. Figueroa initiated this action against Defendant in April 2024, seeking damages under the Federal Torts Claims Act ("FTCA") after an alleged collision with a United States Postal Service ("USPS") vehicle on November 16, 2020

[ECF No. 1].[1]  Defendant moved to dismiss, arguing that Plaintiffs did not exhaust their administrative remedies because they failed to "present" their claims to USPS within two years of the incident, *see* 28 U.S.C. § 2401(b); Defendant alternatively requested a limited discovery schedule and an evidentiary hearing on the exhaustion issue [ECF Nos. 7, 25].  The Court referred Defendant's Motions to Magistrate Judge McCabe [ECF Nos. 12, 26], who entered a preliminary order on Defendant's Motions, permitting discovery and setting an evidentiary hearing [ECF Nos. 18, 26].[2]

After the evidentiary hearing, Magistrate Judge McCabe issued the Report recommending that Defendant's Motions be granted [ECF No. 49].  Magistrate Judge McCabe considered the parties' trial briefs [ECF Nos. 33–35], stipulations [ECF No. 32], exhibits [ECF Nos. 36, 50–51], and heard testimony from four witnesses [ECF No. 44].  Plaintiffs filed Objections to the Report [ECF Nos. 55–56],[3] and Defendant responded to those Objections [ECF No. 59].  The Report is now ripe for adjudication.

## LEGAL STANDARDS

**Report and Recommendations**. To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the

---

[1] Plaintiff Sheila C. Figueroa originally filed a complaint in a separate action. *See Figueroa v. United States of America*, No. 9:24-cv-80947-AMC (Doc. 1).  Figueroa was in the passenger seat of the car that Hernandez was driving during the alleged collision. *Id.*  The Court consolidated the cases on September 19, 2024 [ECF No. 19].

[2] *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.") (internal footnotes omitted).

[3] Though separately filed, Plaintiffs' Objections are identical [ECF Nos. 55–56].  The Court cites to the first-filed objections in lieu of both Plaintiffs' objections [ECF No. 55].

proposed findings and recommendation to which objection is made.  *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989).  A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).  A district court may either accept the magistrate judge's findings regarding credibility after reading the record or come to an independent decision after hearing the testimony in person.  *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010).  If a party fails to object to parts of the report, the Court may accept the recommendation so long as there is no clear error on the face of the record.  *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).  Legal conclusions are reviewed de novo, even in the absence of an objection.  *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

**Exhaustion of administrative remedies under FTCA**.  "'The FTCA is a specific, congressional exception' to the United States' sovereign immunity for tort claims, under which the government may 'be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government.'"  *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994)).  The FTCA's waiver "must be scrupulously observed, and not expanded, by the courts.'"  *Suarez*, 22 F.3d at 1065.  Under the FTCA,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added).  "A federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate

3

agency." *Suarez*, 22 F.3d 1065.  The claimant must present the claim in writing to the appropriate agency "within two years after such claim accrues."  28 U.S.C. § 2401(b).  "A claim is deemed presented when the federal agency receives the claimant's SF–95 'or other written notification of [the] incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.'"  *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843–44 (11th Cir. 2013) (quoting 28 C.F.R. § 14.2(a)).  Plaintiffs bear the burden of proving jurisdiction by a proper and timely presentment of an administrative tort claim.  *Id.* at 844.

## DISCUSSION

The Report makes various findings of fact based on the evidence adduced at the evidentiary hearing [ECF No. 49 pp. 4–12].  The Report then makes four conclusions: (1) Plaintiffs did not present their claims to USPS in June 2021 or September 2022 via mail; (2) Plaintiffs did not present their claims to USPS in June 2022 via email; (3) Plaintiffs' claims cannot be deemed constructively filed; and (4) Plaintiffs' claims should not be equitably tolled [ECF No. 49 pp. 12–23].

Plaintiffs object to just over half of the Report's factual findings [ECF No. 55 pp. 2–7] and to all four of the Report's conclusions [ECF No. 55 pp. 7–17].  The Court addresses each category of objections in turn, ultimately agreeing with the Report's findings and conclusions.

**I.  Objections to factual findings.**

Before addressing the objected-to factual findings, the Court summarizes the undisputed factual findings in the Report.

**A.  Undisputed facts.**

Soon after the collision between Plaintiffs and the USPS vehicle in November 2020, Plaintiffs obtained legal representation from the same counsel (the "Firm"), who on January 6,

CASE NO. 24-80511-CIV-CANNON/McCabe

2021, mailed two letters (one on behalf of each Plaintiff) to the USPS National Tort Claims Center [ECF No. 49 p. 5 ¶ 3]. The letters noted that Plaintiffs intended to file a tort claim against the agency, citing Florida's statutory waiver of sovereign immunity, Fla. Stat. § 768.28 [ECF No. 49 p. 5 ¶ 3]. On January 26, 2021, the USPS responded by:

- advising that the letters do "not constitute a valid claim under the [FTCA]," and that a claim must state, with specificity, a "sum certain" accompanied by supportive documentation;

- instructing Plaintiffs that a Standard Form 95 is typically used to file a claim, but "other written notification" with the requisite material may be submitted instead of the SF-95;

- enclosing a copy of an SF-95 form;

- directing Plaintiffs, should they decide to file a valid claim, to submit it "in accordance with the standards set forth in 39 C.F.R. Part 912.4";

- providing the name and address of Michelle A. Browder, USPS's Tort Claim Coordinator in Fort Lauderdale;

- warning that "an administrative claim must be presented in writing to the appropriate federal agency and received by the agency within two years from the time such claim accrues," citing 28 U.S.C. § 2401(b);

- warning, in bold, that "**neither the Department of Justice regulations nor Postal regulations provide for acceptance of electronically mailed tort claims**."

[ECF No. 49 p. 5 ¶¶ 3–4; ECF No. 50-5 pp. 4–5; ECF No. 50-6 pp. 4–5].

Six months later, in June 2021, a paralegal from the Firm named Marya Ryan attempted to send Plaintiffs' SF-95 forms to USPS [ECF No. 49 p. 6 ¶¶ 5–6]. Ryan testified that she sent the completed SF-95 forms by regular mail to the P.O. Box identified in USPS's January 2021 letter [ECF No. 49 p. 6 ¶ 6]. But instead of sending it to Michelle A. Browder at that address, Ryan sent it to a Pamela Crone, who has never been employed at USPS [ECF No. 49 p. 6 n.4]. Ryan could not remember how she found Crone [ECF No. 49 p. 6 ¶ 6]. USPS has no record of ever receiving the purported June 2021 mailing [ECF No. 49 p. 8 ¶ 16].

5

A year later, Ryan became concerned that she had not received an acknowledgment from USPS [ECF No. 49 p. 8 ¶ 18]. So, on June 24, 2022, Ryan sent an email, with Plaintiffs' SF-95 forms attached as PDFs, to four individuals at four different USPS email addresses [ECF No. 49 p. 8 ¶¶ 19–20]. The email also contained a one-line message stating: "Please advise correct adjuster on this claim 330-21-0049237A" [ECF No. 49 p. 8 ¶ 20; ECF No. 34-5 p. 2]. Two of the recipients were Kimberly Henley and Giovanni Rivera, neither of whom has ever worked for USPS [ECF No. 49 p. 9 ¶¶ 22–23]. The other two individuals were Gregory Cobb and Phillip Roquemore, who at the relevant time, worked for USPS as Mail Transport Equipment Quality Examiners in Florida and Michigan, respectively [ECF No. 49 p. 9 ¶¶ 24–25]. Cobb deleted Ryan's email without reading it; Roquemore read the email but did not open the PDF and reported the email as suspicious via an anti-phishing button [ECF No. 49 p. 10 ¶¶ 27–28]. At the hearing, Ryan could not remember why she emailed these four individuals [ECF No. 49 p. 8 ¶ 21].

A few months later, in September 2022, Ryan followed up on her June 2022 email by allegedly sending a demand package, including the SF-95 forms, to the USPS [ECF No. 49 p. 10 ¶ 30]. Ryan says that she mailed the demand package to Michelle Browder at the address provided by the USPS in its January 2021 letter to Plaintiffs [ECF No. 49 p. 10 ¶ 30]. USPS has no record of receiving the September 2022 demand package [ECF No. 49 p. 11 ¶ 35].

Then, in November 2022, the Firm mailed a completed SF-95 form for each Plaintiff to Michelle Browder at the address listed in USPS's January 2021 letter [ECF No. 49 p. 11 ¶ 37]. USPS received the forms on November 28, 2022—twelve days past the two-year deadline from Plaintiffs' alleged November 16, 2020, injuries [ECF No. 49 p. 11 ¶ 38]. The next day, the Firm sent a letter to Michelle Browder claiming that it made repeated efforts to contact her and that it sent her a demand seventeen days before on November 11, 2022 [ECF No. 49 pp. 11–12 ¶ 39].

6

The letter provided a tracking number of the purported November 11 mailing, but that tracking number corresponds to a delivery to a medical office in California, unaffiliated with USPS [ECF No. 49 p. 12 ¶ 40]. On February 12, 2024, the USPS ultimately denied Plaintiffs' administrative claims as untimely, maintaining that it did not receive the claims until November 28, 2022, outside of the two-year window [ECF No. 49 p. 12 ¶ 41]. *See* 28 U.S.C. § 2401(b).

**B. Plaintiffs' objections to factual findings.**

Plaintiffs divide their objections to the Report's factual findings into three buckets: (1) objections to factual findings as to USPS procedures; (2) objections to factual findings as to Ryan's June 2022 email; and (3) objections to factual findings as to the June 2021 and September 2022 physical mailings [ECF No. 55 pp. 2–7]. The Court addresses each bucket in turn.

**1. The Court agrees with the Report's factual findings as to USPS procedures.**

The Report makes several factual findings related to USPS's procedures for receiving and processing tort claims [ECF No. 49 pp. 7, 9]. These factual findings are derived from the Joint Stipulation [ECF No. 32] and declarations from USPS's national manager of the Tort Program [ECF Nos. 50-1, 50-2]. First, USPS assigns a Tort Claim Coordinator Specialist (the "Specialist") in each district, and each Specialist is trained to receive, date, and sign administrative FTCA claims [ECF No. 49 p. 7 ¶ 11]. Michelle Browder was the Specialist in Fort Lauderdale at the relevant times in this case [ECF No. 49 p. 7 ¶ 11]. Second, the USPS trains other employees—including front-desk mail clerks, administrative assistants, paralegals, adjudicators, and attorneys—to stamp claims as received and forward them to the relevant Specialist upon receipt [ECF No. 49 p. 7 ¶ 12–13]. Third, the Specialist stamps tort-claim documents upon receipt; this is done daily for all incoming mail, faxes, and hand-delivered documents [ECF No. 49 p. 7 ¶ 14]. If the Specialist receives an invalid claim, the claim is stamped with the district stamp on the date of receipt and

entered into the USPS Tort Web Program, and the Specialist corresponds with the potential claimant with instructions on how to present a valid claim [ECF No. 49 pp. 7–8 ¶ 15].

Plaintiffs do not dispute this framework, but they instead argue that the Report's findings "rely solely on USPS's version of who and how tort claims are processed and ignores key evidence" [ECF No. 55 p. 2]. Plaintiffs point to two subsections of USPS's Administrative Support Manual (the "Manual") [ECF No. 55 pp. 2–3]. The first, Manual § 253.1, provides that "[a]ny person who inquires about how to file a claim should be advised to contact the district tort claims coordinator," who will then provide a full explanation of the claim procedures [ECF No. 55 p. 3]. The second, Manual § 253.2, provides that

> [a]ny postal employee who receives a completed tort claim form or other writing indicating that it is a claim should immediately stamp or write the date received on the claim . . . and sign his or her name next to the date. The claim should then be forwarded to the district tort claims coordinator.

[ECF No. 55 p. 3]. USPS admitted that the Manual is current, but contrary to Plaintiffs' assertion that Defendant "admits [that] these regulations are available on its website" [ECF No. 55 p. 3], Defendant explicitly denied that, asserting that the Manual is "generally available only through USPS intranet or for purchase to the public" [ECF No. 51-2 p. 3].

Relying on these Manual subsections, Plaintiffs argue that the Report incorrectly finds that Cobb and Roquemore's duties did not include receiving or processing administrative tort claims [ECF No. 55 p. 4; ECF No. 49 p. 9 ¶¶ 24–25]. The Report bases that finding on the USPS national tort-program manager's declaration asserting that mail transport equipment staff—including Cobb and Roquemore—are not trained on receiving tort claims, and doing so is outside of their job duties [ECF No. 50-1 p. 8]. Plaintiffs resist this by pointing to the fact that Cobb was a "Supervisor Customer Services" employee from 2006 to 2009, and in that role, he was trained on how to receive, sign, and date tort claims [ECF No. 55 p. 4]. As to Roquemore, Plaintiffs insist that his

8

opening of the email—even though he reported it as phishing—must count as presentment because it would be "illogical" to reason otherwise [ECF No. 55 pp. 4–5].

The Court disagrees with Plaintiffs and sees no basis to disturb the Report's factual findings as to USPS procedures [ECF No. 49 p. 7 ¶¶ 11–15, p. 9 ¶¶ 24–25]. Most of these factual findings are not actually in dispute. For example, the USPS procedures on Specialist and other tort-center employee training came from the Joint Stipulation [ECF No. 32 ¶¶ 8–10]. What Plaintiffs are really objecting to is the Report's finding that Cobb and Roquemore's duties did *not* include receiving or processing administrative tort claims [ECF No. 49 p. 9 ¶¶ 24–25; ECF No. 55 p. 4]. The Report properly arrives at that finding by (1) recognizing the plain language of USPS's January 2021 letter to Plaintiffs instructing them exactly where and whom to mail the appropriate forms to, with no allowance for e-mail delivery; (2) correctly reasoning that emailing a PDF form to Cobb and Roquemore, both of whom work as Mail Transport Equipment Quality Examiners in other regions, was inconsistent with USPS tort-claim procedures; (3) and discrediting Ryan's testimony in which she could not remember how the she found the email addresses of the people whom she emailed Plaintiff's claims to in June 2022 [ECF No. 49]. The Manual subsections are discussed further below, but as to these specific factual findings regarding USPS procedures, the Court is satisfied with the well-reasoned Report, which carefully canvasses USPS's rules and thoroughly determines that Ryan's testimony was unreliable [ECF No. 49 pp. 7–9, 18].

**2. The Court agrees with the Report's factual findings as to Ryan's June 2022 email.**

Plaintiffs' next batch of objections pertains to the Report's factual findings on Cobb's and Roquemore's response to Ryan's June 2022 email [ECF No. 55 pp. 5–6; ECF No. 49 pp. 9–10 ¶¶ 26–29]. The Report summarizes USPS's annual training to its employees regarding the dangers of "phishing" emails, noting that USPS trains employees not to open suspicious emails or

9

attachments from unknown sources, regularly sends test emails to employees to check their compliance, and directs employees to report suspicious emails [ECF No. 49 p. 9 ¶ 26]. The Report notes that Cobb deleted the email without reading it or opening the PDF; and Roquemore read the email, did not open the PDF, and reported the email as suspicious [ECF No. 49 p. 10 ¶¶ 27–28].

Based on these factual findings, Plaintiffs object "for what is not said" [ECF No. 55 p. 5]. Plaintiffs argue that the "USPS should and could have such mechanisms in place to sort out legitimate emails from spam or phishing emails," and that it was reasonable for Ryan to rely on the read receipt that she received [ECF No. 55 pp. 5–6]. In response, USPS staunchly objects to the Court "meddl[ing] into USPS's day-to-day email operations" [ECF No. 59 pp. 4–7].

The Court sees no basis to disturb these factual findings because they are well-rooted in the factual record ECF No. 49 pp. 9–10 ¶¶ 26–29]. Plaintiffs' objections provide no basis to conclude otherwise or to entertain Plaintiffs' normative views about what the USPS's phishing protocol should be.

3. **The Court agrees with the Report's factual findings as to the June 2021 and September 2022 physical mailings.**

Plaintiffs' final factual objections pertain to the Report's finding that Plaintiffs did not mail their claims in June 2021 or September 2022 [ECF No. 55 pp. 6–7; ECF No. 49 pp. 6–11 ¶¶ 8–10, 16–17, 31–35]. The Report discredits Ryan's testimony because she could not recall any details about her purported mailing in June 2021—the weight of the package, amount of the postage, whether she created a cover letter, or whether she mailed it from home or work. Nor was there any evidence related to the date or addressee, no postage receipts, no certified mail return receipts, no internal emails, or any other trace of evidence to confirm her testimony [ECF No. 49 pp. 6–7 ¶¶ 7–10]. And, it is undisputed that Ryan sent the purported June 2021 mailing to "Pamela Crone," an individual never employed by USPS [ECF No. 49 p. 6 ¶ 6, n.4]. So, considering that

10

Plaintiffs produced no evidence to corroborate Ryan's verbal testimony, combined with the fact that the USPS has no record of receiving the June 2021 mailing, the Report concludes that the USPS never received the June 2021 mailing [ECF No. 49 p. 8 ¶¶ 16–17]. Similarly, faced with the same dubious factual record as to the September 2022 mailing, along with the USPS having no record of that mailing either, the Report concludes that the USPS never received it [ECF No. 49 pp. 10–11 ¶¶ 31–35]. Plaintiffs' sole argument in objecting to these factual findings is that they disregard Ryan's affidavit, which was closer in time to the events at issue than her live testimony at the hearing [ECF No. 55 pp. 6–7].

The Court agrees with the Report's credibility-laden factual findings regarding Ryan's purported mailings [ECF No. 49 pp. 6–8 ¶¶ 8–10, 16–17, pp. 10–11 ¶¶ 31–36]. Ryan submitted a conclusory affidavit asserting that she "personally mailed [the forms] to Pamela Crone" at the USPS Torts Claims address in June 2021 and later "personally mailed [a written demand package] on or about September 22, 2022" to the USPS Torts Claims office in Fort Lauderdale [ECF No. 51-4]. But Ryan admitted that she could not find the certified mail receipt and "believe[s] that it was lost or inadvertently discarded" [ECF No. 51-4]. And as noted above, there was a notable absence of any extrinsic evidence to corroborate Ryan's barren assertion that she mailed the claims in June 2021 or September 2022. The Report properly weighs all of this evidence, gauges the credibility of Ryan during the evidentiary hearing, and arrives at a fully sensible decision not to credit Ryan's assertions of purported mailings. Indeed, the testimony and evidence submitted on behalf of USPS was consistent that USPS had no record of ever receiving either mailing; that USPS specifically told Plaintiffs exactly where to send exactly what; and that, for the June 2021 mailing in particular, Ryan admitted that she sent that package to a person with no affiliation whatsoever to USPS

11

[ECF No. 49 p. 6 ¶ 6]. *See supra* p. 5. Plaintiff's factual objections lack merit. The Court now addresses Plaintiffs' objections to the Report's conclusions of law.

**II. Objections to conclusions of law.**

To refresh, the Report makes four legal conclusions: (1) Plaintiffs did not present their claims to USPS in June 2021 or September 2022 via mail; (2) Plaintiffs did not present their claims to USPS in June 2022 via email; (3) Plaintiffs' claims cannot be deemed constructively filed; and (4) Plaintiffs' claims should not be equitably tolled [ECF No. 49 pp. 12–23]. Plaintiffs object to all four conclusions [ECF No. 55 pp. 7–17].

**A. The Court agrees with the Report's conclusion as to the physical mailings.**

The Report concludes that there was no presentation to the USPS by Plaintiffs in either June 2021 or September 2022 [ECF No. 49 p. 13]. The Report also rejects Plaintiffs' invocation of the common law mailbox rule [ECF No. 49 pp. 13–15]. Plaintiffs argue the Report errs in doing so because Ryan's affidavit satisfies the elements of that rule [ECF No. 55 pp. 7–8].

As the Report properly explains, a presumption of actual receipt arises under the common law mailbox rule if three elements are met: "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed." *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240 (11th Cir. 2002) (quoting *In re E. Coast Brokers and Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir. 1992)). The Report properly concludes that there is no presumption of actual receipt because Plaintiffs cannot satisfy the second or third elements of the common law mailbox rule [ECF No. 49 p. 13]. The only thing Plaintiffs point to is Ryan's declaration in which she says that she mailed the demand packages [ECF No. 51-1]. But as already covered above, Plaintiffs offer no extrinsic evidence whatsoever to support the notion that they stamped and mailed the

12

packages.[4]  *See Barnett*, 283 F.3d at 1238–40 (finding plaintiff "provided uncontradicted evidence" that he mailed his SF-95 form because he attached copies of it, the cover letter, and the postage-paid envelope that the agency had previously sent him).

Even if there were sufficient evidence to create a presumption of actual receipt, the Court also agrees with the Report that USPS has rebutted that presumption [ECF No. 49 pp. 13–14].  In addition to sworn declarations from USPS's National Tort Center manager averring that USPS has no record of either purported mailing, USPS proffered evidence regarding its policies and procedures relating to receiving and processing tort claims [ECF No. 49 pp. 7–8, 14].  Those robust procedures are clear, as laid out in the Report's factual findings accepted above.  *See supra* pp. 7–9.  Moreover, USPS also told Plaintiffs exactly how to follow these procedures.  *See supra* p. 5.  Additionally, Plaintiffs produce no extrinsic evidence to corroborate Ryan's testimony, but there *is* extrinsic evidence supporting USPS's position of never receiving the claims.  For example, Plaintiffs' alleged demand that they sent in November 2022—just days before their two-year cutoff—is highly dubious because the routing number corresponds to a delivery made to a medical office in California [ECF No. 49 p. 14].  *See supra* pp. 6–7.  It is also noteworthy that, though late, Plaintiffs ultimately did send their demand forms to USPS at the proper address—which they knew all along [*see* ECF No. 49 pp. 11–12].  All of this, as the Report notes, "undermines the credibility and reliability of Plaintiffs' claims," [ECF No. 49 p. 14].  The Court agrees.

---

[4] Plaintiffs do not even appear to meet the first element—properly addressed—as to the June 2021 purported mailing, as Ryan herself even admits that she addressed it to a Pamela Crone, who has never worked at a USPS [ECF No. 49 p. 6; ECF No. 51-4].

**B. The Court agrees with the Report's conclusion that the June 2022 email did not satisfy the presentment requirement in the FTCA.**

The Report considers whether Ryan's June 2022 email constitutes "present[ment] in writing to the [USPS] within two years after such claim accrues" under 28 U.S.C. § 2401(b).[5] Congress did not define "presentment," but a Department of Justice regulation provides that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain."  28 C.F.R. § 14.2(a).  The USPS has implemented two additional regulations guiding the location and manner of presenting claims under the FTCA. First, "[c]laims should be filed with the Tort Claims Coordinator for the Postal Service District Office where the accident occurred, but may be filed at any office of the Postal Service, or sent directly to the Chief Counsel, Torts, General Law Service Center, USPS National Tort Center." 39 C.F.R. § 912.4.  Second, the USPS has determined that

> a claim shall be deemed to have been presented when the U.S. Postal Service receives from a claimant . . . an executed Standard Form 95, Claim for Damage or Injury, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

39 C.F.R. § 912.5(a).

The Report determines that these regulations are "non-dispositive to the outcome of this case" because they do not address whether claims can be "presented" via email, and even if they did, the Court would owe no deference to that regulation under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) [ECF No. 49 p. 16].  The Report thus employs "normal rules of

---

[5] The Report analyzes 28 U.S.C. § 2401(b), which is not part of the FTCA but applies to any "tort claim against the United States."  28 U.S.C. § 2401; *see generally* 28 U.S.C. §§ 2401 to 2416 ("United States as Party Generally").  The actual FTCA statute contains similar language to 28 U.S.C. § 2401(b)—an action is barred against the United States "unless the claimant shall have presented the claim to the [USPS]."  28 U.S.C. § 2675(a).

14

statutory construction" to conclude that the June 2022 email did not satisfy the presentment requirement for two key reasons [ECF No. 49 pp. 17–18].  First, the Report questions how Ryan chose the four individuals to email and doubts that "[r]andom emails to agency employees with duties far afield of tort claims" constitutes presentment, especially considering that USPS expressly directed Plaintiffs on how, where, and to whom they should send their claims [ECF No. 49 p. 18].  Second, the Report explains that recognizing a valid presentment on these facts would "lead to absurd results and impose a nearly impossible burden on agencies" [ECF No. 49 p. 18].  Despite the legitimate risks of phishing emails, adopting Plaintiffs' interpretation would impose on agencies "the burden of requiring all employees, no matter how far afield from tort claims their duties might be, to open all emails and email attachments, no matter how suspicious they might be" [ECF No. 49 pp. 18–19].

Plaintiffs argue that the Report's analysis is wrong because other agencies accept FTCA claims via email; email should not be treated differently than fax, regular mail, and hand delivery, which USPS accepts; and email should be considered "writing" under § 2401(b).  Plaintiffs also argue that, in accordance with the USPS Manual, Cobb and Roquemore should have forwarded Ryan's email to the appropriate tort claims coordinator [ECF No. 55 pp. 8–13].

"The command that an 'action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail' is unambiguous." *McNeil v. United States*, 508 U.S. 106, 111 (1993) (quoting 28 U.S.C. § 2675(a)).  Courts are "not free to rewrite the statutory text." *Id.*  The Court in *McNeil* applied the unambiguous statutory text to conclude that, on the day that the plaintiff filed his complaint in the district court, he had neither presented his claim to the requisite federal agency, "nor had his claim been 'finally denied' by that

15

agency." *Id.* In other words, there is not only a presentment prerequisite to filing suit in the FTCA, but also a final-decision prerequisite. *See Turner*, 514 F.3d at 1200 ("Before instituting a federal suit, the claimant must wait either until the administrative agency finally denies the claim or until at least six months have passed after the claim was filed." (citing 28 U.S.C. § 2675(a)).

Upon de novo review, the Court shares the Report's doubts about imposing upon USPS a legal requirement to accept presentment by email, where no portion of the FTCA imposes that obligation on agencies.[6] In any event, the Court need not resolve the legal propriety of requiring presentment-by-email, because even if email presentment is theoretically acceptable and/or required under the FTCA, the email submitted by Plaintiffs in this case to random agency employees with no responsibility over tort claims cannot reasonably be deemed to qualify as presentment to the appropriate federal agency. *See* 28 U.S.C. § 2675(a). Plaintiffs were specifically directed in this case by USPS to mail their claims to specified individuals and addresses [ECF No. 50-5 p. 4]. That same letter emphasized that USPS does not accept "electronically mailed tort claims" [ECF No. 50-5 p. 4]. Plaintiffs have offered no legal basis to believe that such guidance exceeds the USPS's statutory authority. And despite being expressly told not to email their claims but precisely where and how to mail their claims, Plaintiffs nonetheless elected to email them to four random individuals—two of whom never worked for USPS, and the other two with duties entirely unrelated to receiving or processing tort claims [ECF No. 49 p. 9 ¶¶ 22–25]. Ryan could not remember how she found these individuals, or why

---

[6] USPS emphasizes that no provision of law requires it to accept presentment by email and that it has never accepted presentment of tort claims by email. USPS also notes that the agencies cited by Plaintiff which do accept email have, contrary to USPS, specific systems in place to facilitate email presentment [ECF No. 59 pp. 8–9].

16

she emailed them—reason enough to discredit Ryan's testimony and Plaintiffs' arguments more broadly.[7]

Even beyond the insufficient presentment, the FTCA requires a final denial by the agency in writing and sent by certified or registered mail to the claimant. 28 U.S.C. § 2675(a). These requirements must be strictly observed. *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); *Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001) ("It is well established that the FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed."). Here, there was no final denial by the USPS of the purported June 2022 email presentment. Nor can Plaintiffs find refuge in the six-month provision, because six months from June 24, 2022, would be December 24, 2022, which is outside of Plaintiffs' two-year accrual date following the accident on November 16, 2020. *See* 28 U.S.C. § 2401(b). Thus, even were the Court to accept the dubious notion that Plaintiffs "presented" their claims via email to the USPS in June 2022, those claims were never "finally denied" by the USPS. *See McNeil*, 508 U.S. at 111. A final denial came only on February 12, 2024, and that denial was based on USPS receiving Plaintiffs' finally-properly-filed administrative claims on November 28, 2022—more than two years past the date of the accident [ECF No. 49 p. 12 ¶ 41].

---

[7] Plaintiffs' reliance on Section 253.2 of the Manual does not cure the invalid presentment [ECF No. 55 pp. 11-12]. Section 253.2, which advises employees to stamp a tort claim upon receipt and forward it to a district tort claims coordinator, applies to "[a]ny postal employee who receives a completed tort claim form or other writing indicating that it is a claim." But as the Report's well-reasoned factual findings bear out, Ryan's email was so suspicious that it did not even indicate that it was a claim [ECF No. 49 pp. 8-9]. Cobb deleted it immediately, and Roquemore reported it as a phishing email [ECF No. 49 p. 10]. Rooted in those factual findings, the Court agrees with the Report that Plaintiffs cannot rely on Section 253.2 of the Manual to satisfy the presentment requirement.

In sum, Plaintiffs' June 2022 email did not constitute presentment of their claims to the USPS as required, nor did the federal agency dispose of Plaintiffs' unpresented claims. The Report properly concludes as much, and Plaintiffs' objections yield no error in the Report.

**C. The Court agrees with the Report's conclusion that the doctrine of constructive filing does not apply to satisfy Plaintiffs' statutory presentment obligation.**

The Eleventh Circuit in *Motta* assumed, without deciding, that the doctrine of "constructive filing" could apply in the FTCA context. 717 F.3d at 844. But the Eleventh Circuit cautioned that courts have "only applied it where the inappropriate federal agency: (1) receives a claim that otherwise fully complies with [28 C.F.R.] § 14.2(a)'s presentment requirements with sufficient time before the statute of limitations is set to run, and (2) then violates § 14.2(b)(1)'s requirement to forward the claim to the appropriate agency or return the claim to the claimant." *Id.* at 844–45 (collecting cases).

Plaintiffs argue that the June 2022 email should qualify as "constructively filed" because those employees should have forwarded Plaintiffs' SF-95 forms to the appropriate tort claim coordinator. In other words, they ask the Court to apply the doctrine—which applies when a plaintiff files a claim with the wrong agency—to an intra-agency mistaken filing [ECF No. 55 p. 14]. The Report rejects this argument for three sound reasons. First, the Report concludes that accepting Plaintiffs' argument would impermissibly expand not just the doctrine of constructive filing but also the scope of the FTCA's waiver of sovereign immunity [ECF No. 49 p. 20 (quoting *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022) ("The FTCA's waiver must be scrupulously observed, and not expanded, by the courts.") (internal quotations omitted))]. Second, the constructive filing doctrine normally applies when a claim is presented to the wrong agency, and there is an explicit directive to all agencies to transfer any claim to the correct agency [ECF No. 49 p. 21 (citing 28 C.F.R. § 14.2(b)(1))]. The Manual on

18

CASE NO. 24-80511-CIV-CANNON/McCabe

which Plaintiffs rely, by contrast, contains only a permissive "should" in its provision as to postal employees receiving a complete tort form [ECF No. 49 pp. 20–21]. Third, neither Cobb nor Roquemore violated the Manual § 253.2 because they never opened the PDF attachment (in accordance with their anti-phishing training), so there could not have been a constructive filing [ECF No. 49 p. 21].

Plaintiffs object to the Report's rejection of their constructive-filing argument, insisting that they are "merely ask[ing] the Court to recognize that if the doctrine could apply to different federal agencies, it would be an unnatural result that it would not apply intra-agency" [ECF No. 55 p. 14]. Plaintiffs repeat their heavy reliance on the Manual, arguing that Cobb and Roquemore violated § 253.2 by failing to forward Plaintiffs' claims to a district tort claims coordinator [ECF No. 55 pp. 14–15].

The Court agrees with the Report's well-reasoned analysis and rejects Plaintiffs' objections. The Court must "scrupulously observe[]" the FTCA. *See Dotson*, 30 F.4th at 1264. The only recognized exception to timely filing a claim is 28 C.F.R. § 14.2(b)(1), which allows constructive filing in limited circumstances when a claim is presented to the wrong agency, which is not what happened here. Plaintiffs do not identify any court that has expanded the constructive-filing doctrine beyond that limited reach. Finally, to the extent Plaintiffs analogize Manual § 253.2 to 28 C.F.R. § 14.2(b)(1), the Report correctly distinguishes the two and reiterates that the Court should be hesitant to expand the FTCA's sovereign-immunity waiver [ECF No. 49 p. 20].

**D. The Court agrees with the Report's conclusion that equitable tolling does not apply.**

"[T]he time limits in the FTCA are not jurisdictional, and a court therefore can toll them on equitable grounds." *Dotson*, 30 F.4th at 1268 (citing *United States v. Wong*, 575 U.S. 402, 412 (2015)). Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004). "Equitable tolling is appropriate

19

when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Motta*, 717 F.3d at 846 (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)).

The Court agrees with the Report that equitable tolling is not warranted under the circumstances [ECF No. 49 pp. 22–23]. In January 2021, USPS told Plaintiffs exactly where and exactly how to submit their claims [ECF No. 49 p. 22]. *See supra* p. 5. Plaintiffs' failure to comply with those clear instructions for almost two years, without a reasonable explanation, does not entitle Plaintiffs to the "extraordinary remedy" of equitable tolling which should be used "sparingly" [ECF No. 49 p. 22]. *Dotson*, 30 F.4th at 1268. Plaintiffs' objections—insisting that their purported efforts to mail the claims in June 2021 and September 2022, along with the email in June 2022, constitute reasonable diligence [ECF No. 55 pp. 15–17]—are unpersuasive for all of the reasons already stated in this Order.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 49] is **ACCEPTED**.
2. Defendant's Motions to Dismiss [ECF Nos. 7, 25] are **GRANTED**.
3. Final judgment to follow by separate Order.

**ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of March 2025.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record